PAUL H. SCULL, JR., ESQUIRE
Attorney ID#000961996
Law Offices of Paul H. Scull, Jr.
151 N. Broadway, Suite B
Pennsville, New Jersey 08070
(856) 678-0700
Facsimile (856) 678-9366
paul@sculllaw.com
Attorney for Defendant John Doe subscriber assigned IP address 73.160.162.60

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 73.160.162.60,<br><br>      Defendant | Hon. Joel Schneider, U.S.M.J.<br>Case No. 1:18-cv-14114-JHR-JS<br><br>MEMORANDUM OF LAW OF DEFENDANT JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 73.160.162.60 IN SUPPORT OF MOTION TO QUASH SUBPOENA |

PAUL H. SCULL, JR., ESQ.
On the Brief

                                     /s/ Paul H. Scull, Jr., Esquire
                                     Law Office of Paul H. Scull, Jr.
                                     paul@sculllaw.com
                                     Tel: (856) 678-0700
                                     Fax: (856) 678-9366
                                     *Attorneys for Defendant John Doe*

TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL ARGUMENT......................................................................................................... 4

    I     STANDARD OF REVIEW .............................................................................5

    II    THE COURT MUST QUASH THE SUBPOENA BECAUSE IT
          IS THE KEY DOCUMENT THAT IMPROPERLY SHIFTS THE BURDEN OF
          PROOF OF IDENTIFYING THE REAL PARTY IN INTEREST FROM
          PLAINTIFF TO SUBSCRIBER ................................................................... 5

          A.  RELEVANCE OF THE DISCOVERY SOUGHT ................................ 5

          B.  THE REQUESTING PARTY'S NEEDS .............................................. 7

          C.  POTENTIAL HARDSHIP TO THE PARTY SUBJECT TO THE
              SUBPOENA ........................................................................................ 8

CONCLUSION .................................................................................................................... 9

TABLE OF AUTHORITIES

CASES                                                                                          Pages

*Accord Third Degree Films, Inc., v. John Does 1-110,* No. 12-5817, slip op.
    (ECF No. 7) (D.N.J. Jan. 17, 2013) ............................................................................ 9

*Cobbler Nevada v. Gonzales,* _ F.3d _, No. 17-35041 (9th Cir. Aug. 27, 2018) .................... *1,9*

*Digital Sin, Inc.* v. *John Doe 25,* No. 12-00126 (ECF No. 6 at 5),
    2012 U.S. Dist. LEXIS 1003 (S.D.N.Y. Jan. 30, 2012) .......................................... 4

*Hard Drive Prods., Inc. v. Does 1-90,* No. 11-03825 (ECF No. 18 at 11),
    2012 WL 1094653 (N.D. Cal. Mar. 30, 2012) ......................................................... 8

*Ingenuity 13 LLCv. Doe,* No. 212-08333, 2013 WL 765102,
    (C.D. Cal. Feb. 7, 2012)................................................................................................. 3, 6

*In re BitTorrent Adult Film Copyright Infringement Cases,*
    296 F.R.D. 80 (E.D.N.Y. 2012)................................................................................. 6

*In reLazaridis,* 2011 WL 3859919 (D.N.J. Sept. 1, 2011) ....................................................... 5

*Malibu Media, LLC v. John Does,* No. 12-2078, slip op. (E.D. Pa. June 18, 2013) ............... 4

*Malibu Media, LLC v. Does 1-18,* 2014 WL 229295 (D.N.J. Jan. 21, 2014)......................... 5

*Pepsi-Cola Metro. Bottling Co., Inc. v. Ins. Co. ofN. Am., Inc.,*
    2011 WL 239655 (E.D. Pa. Jan. 25, 2011).................................................................. 5

*PTG Nevada, LLC v. Chan,* No. 16 C 1621,
    2017 WL 168188 (N.D. Ill. Jan. 17, 2017) ................................................................ 6

*State Farm Mut. Auto. Ins. Co.* v. *Fayda,* No. 14-cv-9792-WHP-JCF,
    2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015) ............................................................ 6

*Strike 3 Holdings, LLC v. John Doe subscriber assigned IP*
    *address108.46.43.152,* 1:17-cv-08956-AKH (S.D.N.Y. Mar. 8, 2018)

RULES

Fed. R. Civ. P. 26(b)(1) ................................................................................................5

Fed. R. Civ. P. 26(c)(1) (A) ..........................................................................................5

Fed. R. Civ. P. 45(d)(3) .............................................................................................1,5

Fed. R. Civ. P. 45(d)(3)(A)(iii)(iv) ...............................................................................5

LAW REVIEWS

Matthew Sag, *Copyright Trolling, An Empirical* Study,
    100 Iowa L. Rev. 1005, 1035 (2015) ..........................................................................4

Matthew Sag and Jake Haskell, *Defense Against the Dark Arts of*
    *Copyright Trolling,* 101 Iowa L. Rev. 571, 580 (2018) ............................................. 4, 6

## INTRODUCTION

By this motion, defendant John Doe subscriber assigned IP address 73.160.162.60 ("Subscriber") asks the Court to quash Strike 3 Holdings, LLC's ("Plaintiff') subpoena to Verizon pursuant to Fed. R. Civ. P. 45(d)(3). The subpoena rests on geolocation data that the provider of the data admits is unreliable. Given the questionable unproven data and the fact that in Bit Torrent litigation approximately 30% of ISP subscribers do not infringe a plaintiff's copyrights, courts' routine denials of motions to quash these Rule 45 subpoenas permit "copyright trolls" to extort money from a significant number of innocent people. The reality is that innocent defendants must handover to Bit Torrent plaintiff's a gift of thousands of dollars and pay an attorney thousands of dollars just to settle a case. Granting these subpoenas presumes that all subscribers in fact committed the infringement and shifts Plaintiffs duty to identify the real party in interest to the *subscriber* - an undue burden on Subscriber if ever there was one. More courts are recognizing the prejudice to subscribers in these Bit Torrent cases; this Court should by granting this motion. A review of Plaintiffs litigation history of quick settlements shows that Plaintiff has no need for Subscriber's name. Instead, Plaintiff may simply serve Subscriber through Subscriber's counsel on a Summons naming "John Doe subscriber assigned IP address 173.54.325.53" as defendant.

## STATEMENT OF FACTS

Plaintiff filed its complaint on September 20, 2018, ECF No. 1, and its motion for Leave To Serve a Third Party Subpoena on October 11, 2018, ECF No. 4. Your Honor signed the order for Leave to File a Third Party Subpoena on November 8, 2018. ECF No. 5. Comcast sent a copy of the subpoena and a notice letter to Subscriber on November 26, 2018. See Ex. A attached hereto. Subscriber then retained the undersigned, who made his appearance on December 26, 2018. ECF No. 9.

The undersigned reviewed the Fieser Decl., Ex. B. The undersigned also reviewed the Pasquale Decl., Ex. C, Para. 10.

The Plaintiff has asked the court to allow Subscriber to proceed anonymously under L. Civ. R. 5.3 if the court finds it appropriate. Atkin Brief., page 13, para. C.

## BACKGROUND

The company that provides the data that supports Plaintiffs complaint and its motion for leave to serve a third-party subpoena admits that its geolocation technology is inaccurate. The complaint states that "Plaintiff used IP address geolocation technology by Maxmind Inc. ("IPP"), an industry-leading provider of IP address intelligence and online fraud detection tools, to determine that Defendant's IP address traced to a physical address in this District." (Compl., ECF No. 1, para. 9).

Maxmind states on its website that "IP geolocation is inherently imprecise. Locations are often near the center of the population. Any location provided by a GeoIP database should not be used to identify a particular address or household." The next sentence instructs users to use an "Accuracy Radius as an indication of geolocation accuracy for the latitude and longitude coordinates we return for an IP address. The actual location is likely within the area defined by this radius and the latitude and longitude coordinates." Id. However, Maxmind also stated on its website that it would be removing those latitude and longitude coordinates and is "in the process of reviewing coordinates used in all of our GeoLite2 and GeoIP databases *to ensure there is no risk of misuse."* (emphasis added). Finally, the Maxmind blog announced on April 11, 2018, that some of its databases are being discontinued and users would have to pay for subscriptions to other databases. The dates of the alleged infringements in the complaint run from January 16 through July 27, 2018, which is during the period of Maxmind's restructuring of its services. Maxmind's

open admissions create reasonable doubt that Plaintiff has identified the correct subscriber, much less the real party in interest.

The reliability of the data that Plaintiff uses to monitor and detect infringement also is called into question by examining the UTC codes of the alleged infringement in the complaint. *See* Compl., Ex. A, works #1 and #2. Work #1 was allegedly downloaded from "Blacked" on July 27, 2018 at 7:57:26 and #2 allegedly was downloaded from "Vixen" at 8:12:57. Thus Plaintiffs complaint alleges that Subscriber downloaded an entire movie in less than fifteen minutes. *See* Compl., Ex. A, works #10 and #11. Work #10 was allegedly downloaded from "Blacked" on July 26, 2018 at 20:26:07 and #11 allegedly was downloaded from "Vixen" at 20:29:44. Thus Plaintiffs complaint alleges that Subscriber downloaded an entire movie in less than three minutes. This is unlikely.

> This snapshot [of when the IP address was observed in the BitTorrent swarm] allegedly shows that the Defendants were downloading the copyrighted work - at least at that moment in time. But downloading a large file like a video takes time, and depending on a user's Internet-connection speed, it may take a long time. In fact, it may take so long that the user may have terminated the download. The user may have also terminated the download for other reasons. To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it. No Court would allow a lawsuit to be filed based on that amount of evidence.

*Ingenuity 13 LLC v. Doe,* No. 212-cv-08333, 2013 WL 765102, at *3 (C.D. Cal. Feb. 7, 2013). The odd timestamps of the downloads call into question the accuracy of Plaintiffs data. Plaintiff uses IPP International U.G. ("IPP") to monitor infringement. Mot. Early Disc., Br. at 1, ECF No. 4-1. Malibu Media LLC also uses IPP in its thousands of cases *(see* any Malibu Media LLC complaint). Neither the data that IPP supplies its customers nor the experts interpreting the data have never been subject to cross examination in a court of law because both Malibu Media and

Plaintiff settle well beforehand.[1] Yet, because of the asymmetry between the parties in Bit Torrent litigation, plaintiffs can be confident that the foundation of their cases will ever be questioned.

The consequences are clear. Approximately a third of targeted subscribers are innocent. As one court noted:

> Plaintiffs counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the 'teenaged son ... or the boyfriend if it's a lady.' Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks."

*Digital Sin, Inc. v. John Doe 25,* No. 12-00126 (ECF No. 6 at 5), 2012 U.S. Dist. LEXIS 1003 at 3 (S.D.N.Y. Jan. 30, 2012).

Academic researchers found that "our discussions with numerous defense lawyers over the past three years suggest that these cases settle from anywhere between $1000 and $8000 and that these lawyers believe that as many as a third of their clients are innocent." Matthew Sag and Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling,* 101 Iowa L. Rev. 571, 580 (2018). "For the innocent and guilty alike, the rational response to a demand letter is to settle. In this context, the discovery orders that link IP addresses to personal individual information are little more than a judicially sanctioned hunting license." Matthew Sag, *Copyright Trolling, An Empirical Study,* 100 IowaL. Rev. 1005, 1035 (2015).

This motion is Subscriber's first opportunity to examine the ex parte record and call into question the sufficiency of the complaint and the motion on which the subpoena stands. It is Subscriber's undue burden to do so. And an expensive burden at that.

<u>LEGAL ARGUMENT</u>

I  STANDARD OF REVIEW

---

[1] Of the 157 closed cases filed by Plaintiff in this District, the maximum pendency is eight months. Lippincott Deck, para. 4. Ex. E. Only one Malibu Media case has gone to trial. *See Malibu Media, LLC* v. *John Does,* No. 12-2078 (E.D. Pa. June 18, 2013).

Federal Rule of Civil Procedure 45(d)(3) states that district courts must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A)(iv). The party moving to quash bears the burden of demonstrating that an "undue burden" would otherwise result. *See, e.g., Malibu Media, LLC* v. *Does 1-18,* 2014 WL 229295, at *6 (D.N.J. Jan. 21, 2014) (citations omitted). An undue burden exists when "the subpoena is 'unreasonable or oppressive.'" *In re Lazaridis,* 2011 WL 3859919, at *2 (D.N.J. Sept. 1, 2011). In evaluating whether a subpoena is unreasonable or oppressive, "the district court must balance the relevance of the discovery sought, the requesting party's needs, and the potential hardship to the party subject to the subpoena." *Pepsi-Cola Metro. Bottling Co., Inc. v. Ins. Co. of N. Am., Inc.,* 2011 WL 239655, at *3 (E.D. Pa. Jan. 25, 2011).

Rule 26 also permits a court "for good cause" to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A).

II     THE COURT MUST QUASH THE SUBPOENA BECAUSE IT IS THE KEY DOCUMENT THAT IMPROPERLY SHIFTS THE BURDEN OF PROOF OF IDENTIFYING THE REAL PARTY IN INTEREST FROM PLAINTIFF TO SUBSCRIBER

     A.     RELEVANCE OF THE DISCOVERY SOUGHT

Fed. R. Civ. P. 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Notably, the 2016 amendments to this Rule struck the provision that discovery may seek relevant but inadmissible information "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The amended rule is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse" by emphasizing the need to

analyze proportionality before ordering production of relevant information. *State Farm Mut. Auto. Ins. Co. v. Fayda,* No. 14-cv-9792-WHP-JCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015). The Rule no longer sanctions a plaintiff's hunting expedition for the real party in interest.

Plaintiff will not be any closer to making a prima facie case that connects Subscriber to the alleged infringer once it has Subscriber's name and address. As an academic observed:

> In our view, [a] court should not allow early discovery to reveal the personal information of the account holder linked to an IP address unless and until the plaintiff presents credible evidence as to the methodology used to associate the IP address with a particular act of infringement. Plaintiffs in several cases have relied on experts who had no personal knowledge of the facts about which they testified and have instead simply asserted that the methods used by the plaintiffs were the same as those used by law enforcement and that, in other contexts, the account holder is always the infringer. Even just as a basis of discovery, this level of proof is utterly inadequate.
> Sag and Haskell at 607 (citing Decl. of Patrick Page, Good Man Productions, Inc. v. John Doe subscriber assigned IP address 69.141.26.222, No. 2:14-cv-07902 (D.N.J Dec. 22, 2014), ECF No. 4 (Ex. B)).

Courts are starting to heed their call and have refused to issue subpoenas that are based on geolocation technology without sworn testimony regarding its use. *See, e.g., PTG Nevada, LLC v. Chan,* No. 16 C 1621, 2017 WL 168188, at *2 (N.D. Ill. Jan. 17, 2017); *In re Bit Torrent Adult Film Copyright Infringement Cases,* 296 F.R.D. 80, 84 (E.D.N.Y. 2012) (It is no more likely that the subscriber to an IP address carried out... the purported illegal downloading... than to say an individual who pays the telephone bill made a specific telephone call."). In one case that used similar technology, plaintiff's attorney received Rule 11 sanctions for filing a pleading that lacks factual foundation. *Ingenuity 13 LLC v. Doe,* No. 12-08333, 2013 WL 765102 (C.D. Cal. Feb. 7, 2012) ("Plaintiff concluded that Benjamin Wagar is the person who illegally downloaded the copyrighted video. But Plaintiff fails to allege facts to show how [he] is the infringer, other than noting his IP address, the name of his Bit torrent client, and the alleged time of download").

The Courts of Appeal are following suit. The 9th Circuit recently held in a Bit Torrent case that it is not sufficient to state a claim for direct or contributory infringement based on "a

bare allegation that a defendant is the registered subscriber of an Internet Protocol ("IP") address associated with infringing activity." *Cobbler Nevada* v. *Gonzales*, F.3d , No. 17-35041 (9th Cir. Aug. 27, 2018). The appeals court upheld the dismissal of the direct infringement claim because it was:

> a situation '[w]here a complaint pleads facts that are merely consistent with a defendant's liability, . . . stop[ping] short of the line between possibility and plausibility of entitlement to relief.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The allegations are not 'enough to raise a right to relief above a speculative level.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id.*

Bit Torrent complaints and the subpoenas on which they rest are starting to crumble under the weight of reason. Subscriber's name and address are not relevant to determining the identity of the actual alleged infringer.

B. THE REQUESTING PARTY'S NEEDS

Plaintiff has no need for Subscriber's name and address. Plaintiffs litigation history in this District shows that it does not intend to pursue litigation and seeks subscriber names only to grab a quick settlement. Plaintiff has filed over 200 cases in this District since October 31, 2017. Of the 157 closed cases that were filed between October 31, 2017 and June 14, 2018, average settlement time was four months. Using the instant case as an example, it takes about three months for Plaintiff to receive the name of the subscriber from the ISP, so once Plaintiff has subscriber's name, settlement occurs soon thereafter. This means that under the 30% are innocent rule, approximately fifty subscribers are not the real party in interest, yet have been forced to hand over a gift of thousands of dollars to Plaintiff in this jurisdiction in the past year. At a conservative average settlement of $4,000.00, that amounts to $200,000.00 of ill-gotten gains for Plaintiff.

Plaintiff chooses not to use alternate means to seek damages and thwart infringement of its copyrighted works. Plaintiff claims that it sends out 50,000 DMCA notices a month but did not

explain why it did not send a single notice to Subscriber. Mr. Lansky also does not explain how Plaintiff chooses which subscribers are sent DMCA notices (which encourage quick and inexpensive licensing-based settlements) and which subscribers are allowed to allegedly infringe for, as in this case, seven months - which happens to exponentially increase Plaintiffs statutory damages. Subscriber suspects that Plaintiff did not, in fact, send any DMCA notices to any subscriber in this jurisdiction, and invites Plaintiff to prove that it did.

Some courts are on to this misuse of the courts and the statutory damages provision of the Copyright Act. "[T]he court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net)." *Hard Drive Prods., Inc. v. Does 1-90,* No. 11-03825 (ECF No. 18 at 11), 2012 WL 1094653, at *1 (N.D. Cal. Mar. 30, 2012).

Plaintiff can request a summons in the name of John Doe subscriber assigned IP address 73.160.162.60 and serve process on Subscriber through Subscriber's counsel. Plaintiff does not need Subscriber's name and address to pursue its scheme.

C. POTENTIAL HARDSHIP TO THE PARTY SUBJECT TO THE SUBPOENA

Comcast is not burdened by responding to the subpoena. Subscriber, however, is heavily burdened with the real fear of employment repercussions from the disclosure of Subscriber's name and address to a pornographer. While Subscriber will file a motion to proceed anonymously, to which Plaintiff has suggested would be appropriate in its brief, at this time Subscriber cannot predict if the Court will grant that motion. Nor can Subscriber count on Plaintiffs assertions that it will honor Subscriber's confidentiality because no case in this district has been active long enough to test its pledge. Subscriber has been forced to hire and pay an attorney to investigate the subpoena, the complaint, the Plaintiff, and Bit Torrent litigation in general.

Indeed, it is on record that one subscriber paid $17,222.40 in attorney's fees at approximately this stage in similar litigation. *Cobbler Nevada v. Gonzales*.

As a court in this jurisdiction explained when denying a motion for a Rule 45 subpoena and expedited discovery:

> [i]n some instances, the IP subscriber and the John Doe defendant may not be the same individual. Indeed, the infringer might be someone other than the subscriber; for instance, someone in the subscriber's household, a visitor to the subscriber's home or even someone in the vicinity that gains access to the network. As a result, Plaintiffs sought after discovery has the potential to ensnare numerous innocent internet users into the litigation *placing a burden on them that outweighs Plaintiffs need for discovery as framed.*

*Accord Third Degree Films, Inc.*, v. *John Does 1-110,* No. 12-5817 (ECF No. 7 at 3) (D.N.J. Jan. 17, 2013) (internal citations omitted) (emphasis added).

If Subscriber is one of the 30% of innocent defendants, how does shifting the burden of finding the real party in interest onto Subscriber comport with justice?

## CONCLUSION

The geolocation technology that underlies Plaintiffs complaint and the subpoena is flawed. The internet monitoring technology that underlies Plaintiffs complaint and subpoena has never, in thousands of cases, been cross-examined. There is a 30% chance that Subscriber is innocent of the claims, yet Subscriber has little choice but to pay both Plaintiff and its attorney thousands of dollars simply because it uses the Internet. Plaintiff does not need Subscriber's name and address to serve a Summons, nor does it need them to extract a settlement - deserved or not - from Subscriber. It has been an undue burden and expense for Subscriber to stand up for its rights, so Subscriber respectfully requests that the Court quash the subpoena in recognition of same.

Respectfully submitted,

Dated: December 26, 2018

/s/ Paul H. Scull, Jr., Esquire
Law Office of Paul H. Scull, Jr.
paul@sculllaw.com
Tel: (856) 678-0700

Fax: (856) 678-9366 *Attorneys for Defendant John Doe*